UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SHANELLE N. HORTON, individually and
on behalf of all others similarly situated,                    Civil Action No. 1:17-cv-00894

                                         Plaintiff,            **CLASS ACTION COMPLAINT**

v.

FARMERS INSURANCE EXCHANGE,
TRUCK INSURANCE EXCHANGE,
FIRE INSURANCE EXCHANGE,
MID-CENTURY INSURANCE COMPANY,
FARMERS NEW WORLD LIFE
INSURANCE COMPANY, COAST
NATIONAL INSURANCE COMPANY,
FOREMOST INSURANCE COMPANY,
FOREMOST SIGNATURE INSURANCE
COMPANY, and FOREMOST PROPERTY
AND CASUALTY INSURANCE COMPANY,

                                         Defendants.
-------------------------------------------------------x

## INTRODUCTION

Plaintiff SHANELLE N. HORTON ("Plaintiff") as and for her Complaint against

Defendants FARMERS INSURANCE EXCHANGE, TRUCK INSURANCE EXCHANGE,

FIRE INSURANCE EXCHANGE, MID-CENTURY INSURANCE COMPANY, FARMERS

NEW WORLD LIFE INSURANCE COMPANY, COAST NATIONAL INSURANCE

COMPANY, FOREMOST INSURANCE COMPANY, FOREMOST SIGNATURE

INSURANCE COMPANY, and FOREMOST PROPERTY AND CASUALTY INSURANCE

COMPANY ("Defendant" or the "Companies") allege, upon information and belief, except those

allegations that are directly related to Plaintiff herself, which are alleged upon personal knowledge,

as follows:

## PRELIMINARY STATEMENT

1. This is an action for a declaratory and injunctive relief under 28 U.S.C. § 2201, *et seq*. and money damages for defamation *per se* and breach of contract brought by Plaintiff on behalf of themselves and all others similarly situated.

2. At issue in this litigation is the failure of the Companies to comply with Agent Appointment Agreements that they enter into with their insurance agents, including Plaintiff herein. Instead, the Companies enter into Agent Appointment Agreements with insurance agents, who acquire a substantial number customers for the Companies who pay insurance premiums that provide residual income and profit to the Companies, then the Companies wrongfully terminate Agent Appointment Agreements with their insurance agents under a section of the Agent Appointment Agreement that does not entitle its agents to further commission or "Contract Value," which is a payment made to an insurance agent whose Agent Appointment Agreement with Companies is being terminated. As a consequence, the Companies get to keep their customers acquired by the Companies' terminated agents as well as the residual income generated by policy renewals, while the agents get nothing. The termination of the agents by the Companies is disseminated orally and in writing to third parties, and include serious false allegations about their agents, including Plaintiff, for embezzlement, conversion, misappropriation or theft, *inter alia*, referring to the trade, office, or profession of their agents, including Plaintiff, and is calculated to injure them. The Companies' actions are deliberate and have been done in utter disregard for their legal contractual obligations to its agents and their agents professional reputation in their field. Unless retrained and enjoined, the Companies practices will continue to harm their agents and be unjustly enriched by the customers acquired and premiums earned by their agents.

## PARTIES

3.  Plaintiff is a natural person over the age of majority and a citizen of the State of Georgia.

4.  Defendant FARMERS INSURANCE EXCHANGE is a California Insurance Company.

5.  Defendant FARMERS INSURANCE EXCHANGE's principal place of business is located at 6301 Owensmouth Avenue, Woodland Hill, CA 91367.

6.  Defendant FARMERS INSURANCE EXCHANGE is a citizen of the State of California.

7.  Defendant FARMERS INSURANCE EXCHANGE may be served process via its registered agent Corporation Service Company at 40 Technology Parkway, Southsuite 300, Ben Hill, Norcross, GA 30092.

8.  Defendant TRUCK INSURANCE EXCHANGE is a California Insurance Company.

9.  Defendant TRUCK INSURANCE EXCHANGE's principal place of business is located at 6301 Owensmouth Avenue, Woodland Hill, CA 91367.

10. Defendant TRUCK INSURANCE EXCHANGE is a citizen of the State of California.

11. Defendant TRUCK INSURANCE EXCHANGE may be served process via its registered agent Corporation Service Company at 40 Technology Parkway, Southsuite 300, Ben Hill, Norcross, GA 30092.

12. Defendant FIRE INSURANCE EXCHANGE is a California Insurance Company.

13. Defendant FIRE INSURANCE EXCHANGE's principal place of business is located at 6301 Owensmouth Avenue, Woodland Hill, CA 91367.

14. Defendant FIRE INSURANCE EXCHANGE is a citizen of the State of California.

15. Defendant FIRE INSURANCE EXCHANGE may be served process via its registered agent Corporation Service Company at 40 Technology Parkway, Southsuite 300, Ben Hill, Norcross, GA 30092.

16. Defendant MID-CENTURY INSURANCE COMPANY is a California Insurance Company.

17. Defendant MID-CENTURY INSURANCE COMPANY's principal place of business is located at 6301 Owensmouth Avenue, Woodland Hill, CA 91367.

18. Defendant MID-CENTURY INSURANCE COMPANY is a citizen of the State of California.

19. Defendant MID-CENTURY INSURANCE COMPANY may be served process via its registered agent Corporation Service Company at 40 Technology Parkway, Southsuite 300, Ben Hill, Norcross, GA 30092.

20. Defendant FARMERS NEW WORLD LIFE INSURANCE COMPANY is a Washington Insurance Company.

21. Defendant FARMERS NEW WORLD LIFE INSURANCE COMPANY's principal place of business is located at 3003 77th Avenue SE, Mercer Island, WA 98040-2837.

22. Defendant FARMERS NEW WORLD LIFE INSURANCE COMPANY is a citizen of the State of Washington.

23. Defendant FARMERS NEW WORLD LIFE INSURANCE COMPANY may be served process via its registered agent Corporation Service Company at 40 Technology Parkway, Southsuite 300, Ben Hill, Norcross, GA 30092.

24. Defendant COAST NATIONAL INSURANCE COMPANY is a California Insurance Company.

25. Defendant COAST NATIONAL INSURANCE COMPANY's principal place of business is located at 900 South Pine Island Road, Suite 600, Plantation, FL 33324.

26. Defendant COAST NATIONAL INSURANCE COMPANY is a citizen of the State of California.

27. Defendant COAST NATIONAL INSURANCE COMPANY is a citizen of the State of Florida.

28. Defendant COAST NATIONAL INSURANCE COMPANY may be served process via its registered agent Doren E. Hohl at 6301 Owensmouth Avenue, Woodland Hills, CA 91367.

29. Defendant FOREMOST INSURANCE COMPANY is a Michigan Insurance Company.

30. Defendant FOREMOST INSURANCE COMPANY's principal place of business is located at 5600 Beech Tree Lane, Caledonia, MI 49316.

31. Defendant FOREMOST INSURANCE COMPANY is a citizen of the State of Michigan.

32. Defendant FOREMOST INSURANCE COMPANY may be served process via its registered agent Corporation Service Company at 40 Technology Parkway, Southsuite 300, Ben Hill, Norcross, GA 30092.

33. Defendant FOREMOST SIGNATURE INSURANCE COMPANY is a Michigan Insurance Company.

34. Defendant FOREMOST SIGNATURE INSURANCE COMPANY's principal place of business is located at 5600 Beech Tree Lane, Caledonia, MI 49316.

35. Defendant FOREMOST SIGNATURE INSURANCE COMPANY is a citizen of the State of Michigan.

36. Defendant FOREMOST PROPERTY AND CASUALTY INSURANCE COMPANY is a Michigan Insurance Company.

37. Defendant FOREMOST PROPERTY AND CASUALTY INSURANCE COMPANY's principal place of business is located at 5600 Beech Tree Lane, Caledonia, MI 49316.

38. Defendant FOREMOST PROPERTY AND CASUALTY INSURANCE COMPANY is a citizen of the State of Michigan.

39. Defendant FOREMOST PROPERTY AND CASUALTY INSURANCE COMPANY may be served process via registered agent Corporation Service Company at 40 Technology Parkway, Southsuite 300, Ben Hill, Norcross, GA 30092.

## JURISDICTION AND VENUE

40. The matter in controversy of this civil action exceeds the sum or value of $75,000, exclusive of interest and cots, and is between citizens of different States.

41. This Court has original jurisdiction of this action under 28 U.S.C. § 1332(a).

42. The Companies regularly conduct business in this judicial district.

43. The Companies have significant contacts in this judicial district that are sufficient to subject it to the personal jurisdiction of this Court.

44. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1).

45. Venue is also proper in this judicial district since the Companies can be found in, have agents in, and/or transact business in this judicial district.

## CLASS ALLEGATIONS

46. This action is brought as, and may properly be maintained as, a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

47. Plaintiff brings this action on behalf of herself and all members of a class (the "Class"), consisting of all persons whose Agent Appointment Agreement was wrongfully terminated by the Companies per paragraph D.4.a. or D.4.d. of the Agent Appointment Agreement.

48. Excluded from the Class are all persons who are citizens of the following states: California, Florida, Michigan, and Washington.

49. The requirements of Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure are met in that:

    a.  Rule 12(a)(1) Numerosity – The class for whose benefit this action is brought is so numerous that joinder of all class members is impracticable. Plaintiffs believe that there are at least hundreds or thousands of members of the Class, as described above, although the exact number and identities of individual class members are presently unknown, and can only be ascertained through appropriate discovery.

    b.  Rule 23(a)(2) Commonality – There are no individual issues in this case. All of the legal and factual issues in this class action are common to each proposed class member; including: (1) Whether the agents terminated by the Companies per paragraph D.4.a. or D.4.d. of the Agent Appointment Agreement actually violated paragraphs D.4.a. or D.4.d. of the Agent Appointment Agreement; (2)Whether the Companies' letters and oral communication of statements to third parties of the alleged violations of paragraphs D.4.a. or D.4.d. of the Agent Appointment Agreement are false statements calculated to injure the proposed members, their trade, office, or profession and constitute defamation *per se* under state laws; (3) Whether Plaintiff and the Class are entitled to declaratory or injunctive relief as a result of the Companies' alleged violations of the subject contracts and the law; and (4) Whether Plaintiff and the Class are entitled to punitive damages as a result of the Companies' alleged conduct constituting defamation *per se*.

    c.  Rule 23(a)(3) Typicality – Plaintiff's claims are typical of the proposed class members' claims inasmuch as all such claims arise out of (1) the Companies' breach of contract by wrongfully terminating against under paragraphs paragraph

D.4.a. or D.4.d. of the Agent Appointment Agreement and (2) the Companies' third party communication of false statements about and calculate to injure the proposed members, their trade, office, or profession that constitute defamation *per se*.

d. Rule 23(a)(4) Adequacy of Representation – Plaintiffs can and will fairly and adequately represent and protect the interests of the proposed class. Plaintiff has no interests antagonistic to the interests of the other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and have retained competent counsel with substantial experience in representing persons in federal court. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

50. Without the representation provided by Plaintiff, and without this action proceeding on a class-wide basis, the Companies will not change their wrongful conduct and ongoing practices and virtually no class member would be able to obtain the relief sought herein because the claim are unknown to most of the Companies' terminated insurance agents, and, even if known, are cost prohibitive to pursue because of the burden and expense of showing the systematic and regular nature of the Companies failure to comply with the terms of the Agent Appointment Agreement, which leaves the agents terminated immediately without three (3) months written notice and no "Contract Value" because the termination are wrongfully under paragraph D.4.a. of the Agent Appointment Agreement.

51. Rule 23(b)(2) Certification – Certification is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because the Companies have acted on grounds generally applicable to the proposed classes, thereby making appropriate final injunctive relief requiring the Companies to implement company policies to prevent the wrongful conduct

described herein and for whatever further equitable relief the Court deems appropriate to remedy the wrongful actions that have already taken place.

## FACTUAL ALLEGATIONS

52. The Companies are collectively insurers of automobiles, homes and small business and also provide other insurance and financial services and products.

53. The Companies collectively have more than 50,000 exclusive and independent agents and approximately 22,000 employees.

54. On or about May 5, 2015, Plaintiff signed an Agent Appointment Agreement with the Companies, which was effective June 1, 2015 between Plaintiff and the Companies.

55. On or about June 4, 2015, Alonzo Dunn, Jr. signed the above-referenced Agent Appointment Agreement on behalf of the Companies as their Authorized Representative.

56. A true and correct copy of the aforementioned Agent Appointment Agreement is attached hereto and incorporation herein as **Exhibit A**.

57. Plaintiff and the Companies executed an Addendum to Farmers Insurance Group of Companies Agent Appointment Agreement, which was signed by Plaintiff on or about May 26, 2015, and signed by Alonzo Dunn, Jr. on behalf of the Companies as their Authorized Representative on or about June 4, 2015.

58. A true and correct copy of the aforementioned Addendum to Farmers Insurance Group of Companies Agent Appointment Agreement is attached hereto and incorporation herein as **Exhibit B**.

59. Plaintiff and the Companies executed a Career Agent Program Subsidy Addendum, which was signed by Plaintiff on or about May 26, 2015, and signed by Alonzo Dunn, Jr. on behalf of the Companies as their Authorized Representative on or about June 4, 2015.

60. A true and correct copy of the aforementioned Career Agent Program Subsidy Addendum is attached hereto and incorporation herein as **Exhibit C**.

61. Plaintiff and the Companies executed a Subsidy Schedule I to the Career Agent Program Subsidy Addendum, which was signed by Plaintiff on or about May 26, 2015, and signed by Alonzo Dunn, Jr. on behalf of the Companies as their Authorized Representative on or about June 4, 2015.

62. A true and correct copy of the aforementioned Subsidy Schedule I to the Career Agent Program Subsidy Addendum is attached hereto and incorporation herein as **Exhibit D**.

63. Plaintiff and the Companies executed a Subsidy Schedule II to the Career Agent Program Subsidy Addendum, which was signed by Plaintiff on or about May 26, 2015, and signed by Alonzo Dunn, Jr. on behalf of the Companies as their Authorized Representative on or about June 4, 2015.

64. A true and correct copy of the aforementioned Subsidy Schedule II to the Career Agent Program Subsidy Addendum is attached hereto and incorporation herein as **Exhibit E**.

65. Plaintiff and the Companies executed a Subsidy Schedule III to the Career Agent Program Subsidy Addendum, which was signed by Plaintiff on or about May 26, 2015, and signed by Alonzo Dunn, Jr. on behalf of the Companies as their Authorized Representative on or about June 4, 2015.

66. A true and correct copy of the aforementioned Subsidy Schedule III to the Career Agent Program Subsidy Addendum is attached hereto and incorporation herein as **Exhibit F**.

67. Throughout Plaintiff's tenure with the Companies as an Agent, Plaintiff fulfilled all of her Agent's Duties as required per paragraph B. of the Agent Appointment Agreement, including, but not limited to, the following:

a. Selling, soliciting, and servicing insurance for the Companies and submitting to the Companies every request or application for insurance for the classes and lines underwritten by the Companies and eligible in accordance with their published rules and manuals;

b. Providing the facilities necessary to furnish professional insurance services to all policyholders of the Companies including, but not limited to, collecting and promptly remitting monies due the Companies, receiving and adjusting claims within Agent's authority granted in writing by the Companies separately herefrom, notifying the Companies of all claims beyond that authority, and servicing all policyholders of the Companies in such a manner as to advance the interests of the policyholders, potential policyholders, Agent, other agents of the Companies and the Companies;

c. Permitting authorized representatives of the Companies to review and examine all Agency records for the purpose of verifying compliance with the Agent Appointment Agreement and fully cooperating in such efforts and to ensure that all records relating to the Agency under this Agreement are kept separate and apart from other records Plaintiff may retain in her office;

d. Providing a fidelity bond in favor of the Companies;

e. During the term of the Agent Appointment Agreement, obtaining and maintaining, at Plaintiff's sole expense, an Errors and Omissions ("E&O") policy;

f. Meeting at all times performance standards, including, without limitation, any specific performance standards the Companies may require of Plaintiff in the Companies' sole discretion;

g.  Conducting business in accordance with the published policies, rules, and manuals of the Companies in effect at the time of appointment and modified from time to time by the Companies, including, without limitation, adhering to customer service standards and using the Companies' trade names, trademarks, service marks, and other brand names associated with the Companies only as expressly authorized and pre-approved by the Companies in their sole discretion.

68.  During the less than two-year life of the contract in question, Plaintiff's agency flourished.

69.  As a result of Plaintiff's diligent efforts, the Companies acquired at least six hundred (600) customers who purchased insurance products from the Companies.

70.  Most of the customers acquired by the Plaintiff for the Companies came from leads purchased by Plaintiff at her sole expense.

71.  Plaintiff on average spends approximately $3,500 per month on customer leads.

72.  The Companies have realized approximately at least $650,000 in gross income from premiums paid by new customers acquired by Plaintiff over the lifetime of her Agent Appointment Agreement with the Companies, which does not include policy renewal income.

73.  Plaintiff has earned approximately at least $115,000 in gross income commissions paid by the Companies for new customer insurance premiums and renewal premiums paid by policyholders to whom Plaintiff sold the Companies policies over the less than two-year tenure under the Agent Appointment Agreement with the Companies.

74.  Despite Plaintiff's diligent efforts for the Companies, she was summoned to a meeting at the Companies office located at 13010 Morris Road, Building 1, Suite 200, Alpharetta, GA

30004, on February 3, 2017, wherein she was given a letter signed by Bina Maharaj dated February 3, 2017, terminating her Agent Appointment Agreement ("Termination Letter").

75. A true and correct copy of the Termination Letter, except for Plaintiff's redacted home address, is attached hereto and incorporated herein as **Exhibit G**.

76. Bina Maharaj signed the Termination Letter as "Authorized Representative of the Companies."

77. Bina Maharaj delivered the Termination Letter to Plaintiff in the presence of Charles "Chuck" Whittington.

78. Mr. Whittington is employed by the Companies as an Agency Distribution Sales Specialist.

79. As an enclosure with the Termination Letter, Plaintiff was given a paper entitled "Important Notice of Termination of Appointment Agreement(s) and Agencies" dated February 3, 2017 ("Termination Notice").

80. A true and correct copy of the Termination Notice, except for Plaintiff's redacted home address, is attached hereto and incorporated herein as **Exhibit H**.

81. The Termination Notice was signed by Bina Maharaj as the Companies' authorized representative.

82. The Termination Letter stated that "the Companies are hereby immediately terminating your appointment agreement per paragraph D.4.a for Embezzlement, conversion, misappropriation or theft in connection with the Agency, or disappearance of premium or property belonging to the Companies or a consumer which is not explained to the Companies' satisfaction, or failure to remit required funds to the Companies or obtaining insurance for Agent's own benefit without payment and D.4.d Willful misrepresentation in

connection with the Agency that is material to the operation of the Agency or the Companies." *See* **Exhibit G**.

83. However, Plaintiff committed no such acts as alleged in the Termination Letter by Ms. Maharaj and the Companies.

84. Furthermore, Ms. Maharaj and the Companies provided no facts or evidence supporting the serious allegations and grounds for the immediate termination of Plaintiff.

85. The Termination Letter further stated, "In addition, we have the following bases for termination, B.2 failure to collect and promptly remit monies due the Companies and failure to service all policyholders of the Companies in such a manner as to advance the interests of the policyholders, potential policyholders Agent, other agents of the Companies and the Companies: B.7 failure to conduct business in accordance with the published policies, rules and manuals of the Companies in effect at the time of the appointment and modified from time to time by the Companies: D.4.f conduct that is detrimental to the Companies and paragraph L failure to conform to normal good business practice." *See* **Exhibit G**.

86. Again, Plaintiff has not committed any of the acts alleged by Ms. Maharaj and the Companies in the Termination Letter.

87. Again, Ms. Maharaj and the Companies provided not facts or evidence supporting the serious allegations and grounds for the purported additional grounds for termination of Plaintiff.

88. Upon delivery of the termination letter, Plaintiff requested a review by the Termination Review Board ("TRB") pursuant to paragraph E. of the Agent Appointment Agreement. *See, e.g.,* **Exhibit A** at p. 3, ¶ E.

89. Plaintiff also requested a copy of the Companies' TRB procedures.

90. Plaintiff was advised by Ms. Maharaj to direct her inquiries to the Companies' lawyers since she was represented by a lawyer. However, Ms. Maharaj refused to provide the Companies' lawyers information to Plaintiff.

91. According to the Termination Letter, a copy of the Termination Letter was copied to "Contract File – 44-11-G1" or some file maintained by the Companies regarding Plaintiff.

92. As a result of the serious false allegations made by the Companies, Plaintiff's attorney sent a letter to the Companies to the attention of Ms. Maharaj demanding that the false allegations contained in the Termination Letter be retracted and that Plaintiff be properly given written notice of termination pursuant to paragraph D.1. of the Agent Appointment Agreement by 5:00 P.M. EST on February 3, 2017.

93. Paragraph D.1. of the Agent Appointment Agreement states, "This Agreement may be terminated without cause by either Agent or the Companies upon three (3) months written notice." **Exhibit A**, p. 2, ¶ D.1.

94. Paragraph D.1. of the Agent Appointment Agreement essentially provides a means for the Companies or Plaintiff to terminate the Agent Appointment Agreement "without case." *Id.*

95. Termination of Plaintiff by the Companies under paragraph D.1. of the Agent Appointment Agreement would have been the proper method for the Companies to terminate Plaintiff because there is no cause for the Companies to terminate Plaintiff.

96. Ms. Maharaj and the Companies failed to provide a retraction of the Termination Letter as demanded by Plaintiff.

97. Plaintiff has experienced severe emotional distress as a result of receiving the Termination Letter because she fears that the false allegations contained in the Termination Letter will preclude her from being able to maintain her insurance license.

98. Furthermore, Plaintiff is greatly concerned about her financial welfare for her and her daughter, as Plaintiff is a single parent and due to the Companies' termination of her under paragraph D.4.a., no "Contract Value" will be paid to her following termination.

99. "Contract Value" is a payment made to an agent whose Agent Appointment Agreement with the Companies is being terminated. **Exhibit A**, p. 3, ¶ H.1.

100.    Additionally, Plaintiff will not be entitled to any commissions after her termination date.

101.    Furthermore, Plaintiff at the time of her termination employed three (3) persons.

102.    Plaintiff was greatly concerned about the welfare of her employees and being able to pay rent for the free-standing office location that is leased in Plaintiff's personal name.

103.    Also, Plaintiff spent approximately $15,000 of her own money on Farmers-branded items that she would not have purchased if she had known that the Companies would prematurely or wrongfully terminate her Agent Appointment Agreement on unlawful grounds without notice.

104.    Upon information and belief, the Companies wrongfully terminated Plaintiff without notice under paragraph D.4.a. to avoid paying her "Contract Value."

105.    Upon information and belief, the Companies wrongfully terminated Plaintiff without notice to avoid paying Plaintiff policy renewal commissions from her customers.

106.    Upon information and belief, the Companies wrongfully terminated Plaintiff without notice because it is in the habit of creating high turnover to increase its profits.

107.     Upon information and belief, the Companies communicated the substance of the Termination Letter to third parties in writing and orally, which is calculated to injure Plaintiff.

108.     The allegations by the Companies and Ms. Maharaj are injurious to Plaintiff, her trade, her profession as an insurance salesperson, and her career as an insurance salesperson.

109.     Without a retraction of the allegations of grounds of termination of Plaintiff by the Companies, Plaintiff is compelled to disclosed the termination grounds to future employers and insurance governing authorities upon their request or otherwise.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

110.     Plaintiff repeats and realleges each paragraph set forth above in paragraphs 1through 109 as if fully set forth herein verbatim.

111.     Plaintiff and the Companies entered into a contract entitled "Agent Appointment Agreement" that had an effective date of June 1, 2015. **Exhibit A**.

112.     Plaintiff did all, or substantially all, of the significant things that the Agent Appointment Agreement required Plaintiff to do.

113.     Any performance by Plaintiff under the Agent Appointment Agreement that was not outlined as terms therein was done with the consent of and/or pursuant to the training of the Companies.

114.     Any term or duty not performed or fulfilled under the Agent Appointment Agreement, Plaintiff was excused from doing those things.

115.     All conditions required of Plaintiff by the Agent Appointment Agreement for the Companies' performance occurred or were excused.

116.     The Companies failed to comply with paragraph D. of the Agent Appointment Agreement.

117.     The Companies failed to comply with paragraph D. of the Agent Appointment Agreement because they terminated Plaintiff per paragraph D.4.a. of the Agent Appointment Agreement because Plaintiff did not violate any of the enumerated offenses listed in paragraph D.4.a. of the Agent Appointment Agreement.

118.     The Companies failed to comply with paragraph D. of the Agent Appointment Agreement because they terminated Plaintiff per paragraph D.4.d. of the Agent Appointment Agreement because Plaintiff did not violate any of the enumerated offenses listed in paragraph D.4.d. of the Agent Appointment Agreement.

119.     The Companies failed to comply with paragraph D. of the Agent Appointment Agreement because they terminated Plaintiff per paragraph D.4.f. of the Agent Appointment Agreement because Plaintiff did not violate any of the enumerated offenses listed in paragraph D.4.f. of the Agent Appointment Agreement.

120.     The Companies failed to comply with paragraph D.2. of the Agent Appointment Agreement because they terminated Plaintiff per paragraph B.2. or D.2. of the Agent Appointment Agreement because Plaintiff did not breach any of the provisions of the Agent Appointment Agreement and the Companies did not give Plaintiff thirty (30) days written notice prior to terminating the Agent Appointment Agreement.

121.     The Companies failed to comply with paragraph D.2. of the Agent Appointment Agreement because they terminated Plaintiff per paragraph B.7. or D.2. of the Agent Appointment Agreement because Plaintiff did not breach any of the provisions of the Agent Appointment Agreement and the Companies did not give Plaintiff thirty (30) days written

notice prior to terminating the Agent Appointment Agreement for an alleged breach of contract.

122.    The Companies failed to comply with paragraph D.1. of the Agent Appointment Agreement because despite they terminated the Agent Appointment Agreement with Plaintiff without cause, despite their false grounds of cause and/or breach of contract, without giving Plaintiff three (3) months written notice prior to the termination date.

123.    Plaintiff was harmed by the Companies' failure to comply with the Agent Appointment Agreement.

124.    Plaintiff lost up to three (3) months of prospective commissions as a result of the Companies' failure to comply with the Agent Appointment Agreement.

125.    Plaintiff lost up to thirty (30) days of prospective commissions as a result of the Companies' failure to comply with the Agent Appointment Agreement.

126.    Plaintiff lost payment of the "Contract Value" as defined in paragraph H. of the Agent Appointment Agreement as a result of the Companies' failure to comply with the Agent Appointment Agreement.

127.    Plaintiff lost prospective "Agent Bonuses" as defined in paragraph I. of the Agent Appointment Agreement as a result of the Companies' failure to comply with the Agent Appointment Agreement.

128.    Plaintiff lost prospective income and profits from her anticipated "Retail West" contract conversion that the Companies promised to her, whereby Plaintiff's regular commission from the Companies would be increased by a thirty-percent (30%) bonus, as a result of the Companies' failure to comply with the Agent Appointment Agreement.

129.     Plaintiff lost $10,000 from the Companies toward to cost of office expenses incurred by Plaintiff, which was promised to Plaintiff as part of her "Retail West" contract conversion, as a result of the Companies' failure to comply with the Agent Appointment Agreement.

130.     Plaintiff prematurely lost or wasted money that she invested into her agency branded for Farmers Insurance or the Companies as a result of the Companies' failure to comply with the Agent Appointment Agreement.

131.     The Companies are liable to Plaintiff for breach of contract and money damages.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Defamation *Per se*)

132.     Plaintiff repeats and realleges each paragraph set forth above in paragraphs 1-131 as if fully set forth herein.

133.     The Companies, including their authorized representative(s) for who(m) they are vicariously liable, made one or more false statements about Plaintiff, including, but not limited to, that Plaintiff (1) committed "embezzlement, conversion, misappropriation or theft in connection with the Agency, or disappearance of premium or property belonging to the Companies or a consumer which is not explained to the Companies' satisfaction, or failure to remit required funds to the Companies or obtaining insurance for Agent's own benefit without payment" and/or (2) made "[w]illful misrepresentation in connection with the Agency that is material to the operation of the Agency or the Companies" and/or (3) "[failed] to collect and promptly remit monies due the Companies and [failed] to service all policyholders of the Companies in such a manner as to advance the interests of the policyholders, potential policyholders Agent, other agents of the Companies and the Companies" and/or (4) "[failed] to conduct business in accordance with the published

policies, rules and manuals of the Companies in effect at the appointment and modified from time to time by the Companies" and/or (5) engaged in "conduct that is detrimental to the Companies" and/or (6) "[failed] to conform to normal good business practice" (collectively "False Statements").

134.     The Companies, including their authorized representative(s) for who(m) they are vicariously liable, communicated one or more of the False Statements to a third party.

135.     The Companies, including their authorized representative(s) for who(m) they are vicariously liable, were at minimum negligent in making one or more the of False Statements about Plaintiff and communicating the same to one or more third parties because the False Statements had no basis in fact or law with respect to Plaintiff.

136.     One or more of the False Statements made by the Companies, including their authorized representative(s) for who(m) they are vicariously liable, regarding Plaintiff Charges Plaintiff with a crime punishable by law.

137.     One or more of the False Statements made by the Companies, including their authorized representative(s) for who(m) they are vicariously liable, regarding Plaintiff refers to her trade, office, and/or profession, and was calculated to injure Plaintiff.

138.     One or more of the False Statements made by the Companies, including their authorized representative(s) for who(m) they are vicariously liable, constitute defamation *per se*.

139.     One or more of the False Statements made by the Companies, including their authorized representative(s) for who(m) they are vicariously liable, harmed Plaintiff's professional reputation.

140. One or more of the False Statements made by the Companies, including their authorized representative(s) for who(m) they are vicariously liable, harmed Plaintiff's personal reputation.

141. One or more of the False Statements made by the Companies, including their authorized representative(s) for who(m) they are vicariously liable, harmed Plaintiff by her loss of income, profits, and business good will.

142. One or more of the False Statements made by the Companies, including their authorized representative(s) for who(m) they are vicariously liable, harmed Plaintiff by her loss of prospective income, profits, and business good will.

143. As a result of the conduct the Companies regarding Plaintiff, the Companies are liable to Plaintiff for defamation, including libel, slander, and/or defamation *per se*.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SHANELLE N. HORTON, on behalf of herself and the Class, prays for this Court to issue an Order against Defendants FARMERS INSURANCE EXCHANGE, TRUCK INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, MID-CENTURY INSURANCE COMPANY, FARMERS NEW WORLD LIFE INSURANCE COMPANY, COAST NATIONAL INSURANCE COMPANY, FOREMOST INSURANCE COMPANY, FOREMOST SIGNATURE INSURANCE COMPANY, and FOREMOST PROPERTY AND CASUALTY INSURANCE COMPANY, and each of them, as follows:

a. Certifying this case as a class action and certifying the named plaintiff herein to be an adequate representative and her counsel to be adequate class counsel;

b. Entering a judgment pursuant to 28 U.S.C. § 2201 declaring the action and practices of Defendants a breach of contract of the Agent Appointment Agreement;

c. Entering a judgment pursuant to 28 U.S.C. § 2201 declaring the action and practices of Defendants as defamation *per se*;

d. Entering a permanent injunction enjoining Defendants, and their agents, employees, subsidiaries and affiliated insurers, from continuing to wrongfully terminate agents pursuant to paragraph D.4.a or D.4.d. of the Agent Appointment Agreement, when the agents do not violate paragraph D.4.a or D.4.d. of the Agent Appointment Agreement, and ordering Defendants to adopt and enforce policies and procedures to ensure compliance;

e. Entering a permanent injunction enjoining Defendants, and their agents, employees, subsidiaries and affiliated insurers, from continuing to communicate to third parties oral and written statements regarding agents' termination pursuant to paragraph D.4.a or D.4.d. of the Agent Appointment Agreement, when the agents do not violate paragraph D.4.a or D.4.d. of the Agent Appointment Agreement, and ordering Defendants to adopt and enforce policies and procedures to ensure compliance;

f. Entering a judgment, on behalf of Plaintiff, for compensatory damages proved at trial;

g. Entering a judgment, on behalf of Plaintiff and the Class, for compensatory damages, in an amount to be determined following evidence at trial, to be distributed to Plaintiff and the Class in a manner directed by the Court;

h. Entering a judgment, on behalf of Plaintiff, for actual, consequential, and punitive damages;

i. Entering a judgment, on behalf of Plaintiff and the Class, for actual, consequential, and punitive damages, in an amount to be determined following evidence at trial, to be distributed to Plaintiff and the Class in a manner directed by the Court;

j.   Entering a judgment awarding Plaintiff the costs of this action, including the fees and costs

of experts, disbursements, together with attorneys' fees; and

k.   Awarding such other and further relief as the Court finds necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: February 7, 2017

s/ Brian L. Ponder
Brian L. Ponder, Esq.
BRIAN PONDER LLP
200 Park Avenue, Suite 1700
New York, New York 10166
Tel: (646) 450-9461
Fax: (646) 607-9238
Email: brian@brianponder.com
ATTORNEY FOR PLAINTIFF