

# Agent Appointment Agreement

This Agent Appointment Agreement (hereinafter "Agreement") is effective **6/01/2015**, between **Shanelle     N     Horton** (hereinafter "Agent") and Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, Farmers New World Life Insurance Company, and their subsidiaries and affiliated insurers which, during the term hereof, file a notice of Agent's appointment with the State of **GA-Georgia** (hereinafter "State") to which filing Agent hereby consents, all hereinafter collectively called the "Companies." Agent and the Companies may be collectively referred to as the "Parties."

Now, therefore, for good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

### A. Companies' Duties.

1. To pay new business and service commissions or any other commission to Agent in accordance with commission schedules and rules as established by the Companies and in effect on the effective date of a commission transaction.

2. If available from a third party provider, to arrange for Group Life and Comprehensive Medical Insurance plans and pay a portion of the premium if Agent elects to apply for coverage under these plans. The balance of the premium due for Agent's coverage will be paid by Agent.

3. To provide approved Company manuals, forms and policyholder records necessary to carry out the provisions of this Agreement.

4. To provide, from time to time and in the Companies' sole discretion, advertising assistance pursuant to programs established by the Companies.

5. To make available to Agent education and sales training programs developed by the Companies.

### B. Agent's Duties.

1. To sell, solicit, and service insurance for the Companies and to submit to the Companies every request or application for insurance for the classes and lines underwritten by the Companies and eligible in accordance with their published rules and manuals. All business acceptable to the Companies and written by Agent will be placed with the Companies. If business is not acceptable to the Companies, Agent shall place such business through Kraft Lake Insurance Agency, Inc. (hereinafter "Kraft Lake"), if eligible for placement through Kraft Lake. Only business that is not acceptable to the Companies and not eligible for placement through Kraft Lake may be placed outside the Companies.

2. To provide the facilities necessary to furnish professional insurance services to all policyholders of the Companies including, but not limited to, collecting and promptly remitting monies due the Companies, receiving and adjusting claims within Agent's authority granted in writing by the Companies separately herefrom, notifying the Companies of all claims beyond that authority, and servicing all policyholders of the Companies in such a manner as to advance the interests of the policyholders, potential policyholders, Agent, other agents of the Companies and the Companies. The location of Agent's office must be approved by the Companies and cannot unduly interfere with the business established by another agent, as determined by the Companies in their sole discretion. The business conducted by Agent is referred to in this Agreement as the "Agency."

3. To permit authorized representatives of the Companies to review and examine all Agency records for the purpose of verifying compliance with this Agreement and to fully cooperate in such efforts and to ensure that all records relating to the Agency under this Agreement are kept separate and apart from other records Agent may retain in Agent's office.

4. To provide a fidelity bond in favor of the Companies. Agent may either participate in the blanket fidelity bond arranged by the Companies by paying the applicable premium, or Agent may obtain a separate fidelity bond, at Agent's sole expense, as long as the value of the bond is within the parameters deemed acceptable by the Companies.

5. During the term of this Agreement, Agent agrees to obtain and maintain, at Agent's sole expense, an Errors and Omissions ("E&O") policy. If Agent chooses not to participate in the Farmers-sponsored E&O program, Agent must obtain and maintain an E&O policy that provides coverage at levels and on terms and conditions no less favorable than those provided by the Farmers-sponsored E&O program. Such E&O policy must name the Companies as an additional insured. Upon request by the Companies, Agent shall immediately provide Companies with evidence of the required E&O policy.

6. To meet at all times performance standards, including, without limitation, any specific performance standards the Companies may require of Agent in their sole discretion.

7. To conduct business in accordance with the published policies, rules and manuals of the Companies in effect at the time of the appointment and modified from time to time by the Companies, including, without limitation, adhering to customer service standards and using the Companies' trade names, trademarks, service marks and other brand names associated with the Companies only as expressly authorized and pre-approved by the Companies in their sole discretion.

8. To comply with all post-termination obligations set forth in paragraph J.

C. **Effect on Prior Agreements.** If this Agreement becomes effective at a time when Agent is party to a pre-existing agent appointment agreement with the Companies (referred to as the "Prior Agreement"), the terms and conditions of this Agreement shall replace those of the Prior Agreement in their entirety, except that any and all previously executed addendums to the Prior Agreement will remain in full force and effect as addendums to this Agreement and any reference in such addendums to time periods shall be interpreted as being reduced by the portion of such time which ran during the effective term of the applicable addendum. The terms and conditions of the Prior Agreement shall otherwise have no continuing effect. Agent agrees that no Contract Value will be payable under the Prior Agreement and that any rights to Contract Value will be determined according to the terms and conditions of this Agreement.

D. **Termination of this Agreement.**

1. This Agreement may be terminated without cause by either Agent or the Companies upon three (3) months written notice. This Agreement automatically and immediately terminates upon the death of Agent.

2. If the provisions of this Agreement are breached by either Agent or the Companies, the Agreement may be terminated by the other party on thirty (30) days written notice.

3. This Agreement may be terminated immediately by mutual consent of the Parties.

4. This Agreement may be terminated immediately by the Companies for any of the following:

    a. Embezzlement, conversion, misappropriation or theft in connection with the Agency, or disappearance of premium or property belonging to the Companies or a consumer which is not explained to the Companies' satisfaction, or failure to remit required funds to the Companies or obtaining insurance for Agent's own benefit without payment;

    b. Causing, either directly or indirectly, the switching of insurance from the Companies to another carrier in violation of the terms of this Agreement;

    c. Abandonment of the Agency;

   d. Willful misrepresentation in connection with the Agency that is material to the operation of the Agency or the Companies;

   e. Conviction of a felony; or

   f. Conduct that is disparaging of or detrimental to the Companies, including, without limitation, conduct determined by the Companies to constitute a conflict of interest.

5. If this Agreement is terminated pursuant to paragraphs D.2 or D.4 and it is later determined that longer notice should instead have been provided, then the termination remains effective and Agent's sole recoverable damages, if any, shall be limited to Agent's lost profits incurred during the shortest notice period deemed appropriate which in no event shall exceed three (3) months.

E. **Termination Review Board.** If this Agreement is terminated by the Companies pursuant to paragraphs D.2 or D.4, Agent may, within ten (10) days of receiving the written notice of termination, request a review by a Termination Review Board (hereinafter "TRB"). The review will be held in accordance with the Companies' procedures in place at the time Agent requests the TRB review. The effective termination date in the written termination notice to Agent will remain in effect unless the Companies elect, at their discretion, to change or rescind said date or rescind the termination following TRB review.

F. **Post-Termination Commissions.** Upon and after the effective termination date of Agreement, Agent will not be entitled to any commissions except as provided in this paragraph. For all policies written prior to termination date for Farmers New World Life and for any of the Companies that calculate commissions as premiums are received (hereinafter "PAR Insurers"), Agent will be entitled to first year new business commissions which become payable over the next twelve months following termination, less chargebacks. Payment of such commissions will occur after the completion of the twelve months. For all policies written prior to termination date for the Companies other than Farmers New World Life and PAR Insurers, Agent will be entitled to any new business commissions, less chargebacks. No service commissions will be payable to Agent after effective termination date of Agreement.

G. **Sale of Agent's Service and Commission Rights.** Agent or Agent's heirs may sell all or any part of Agent's service and commission rights to another person or entity at any time on the following conditions: (1) purchaser is approved by the Companies in accordance with the Companies' procedures in place at the time Agent seeks approval; (2) approved purchaser executes an appointment agreement with the Companies; and (3) selling Agent or selling Agent's heirs provide a notice of intended sale to the Companies six (6) months in advance of intended sale, or such other advance notice period approved by the Companies. The Companies shall have the sole and absolute discretion in the approval of any proposed purchaser, and said approval may be withheld for any reason or no reason. In the event of a sale, selling Agent agrees that the commission rights sold pursuant to this paragraph will not be considered for purposes of calculating "Contract Value" (as defined in paragraph H). If selling Agent sells all of Agent's service and commission rights pursuant to this paragraph, then selling Agent will receive no Contract Value payment. All written communications, documents and advertisements concerning an intent to sell all of or any part of Agent's service and commission rights must be pre-approved by the Companies. Approval by the Companies of communications, documents or advertisements or of a sale or a buyer shall not constitute a warranty by the Companies of the accuracy of representations, the appropriateness of the sale terms or the buyer's ability or willingness to perform.

H. **Contract Value.** "Contract Value" is a payment made to an agent whose Agent Appointment Agreement with the Companies is being terminated. It is intended by the Parties as additional consideration for the post-termination obligations described below in paragraph J. Should this Agreement be terminated pursuant to paragraph D.4.a or the Agent's service and commission rights sold pursuant to paragraph G, no Contract Value payment will be made.

   1. Calculating Contract Value.

      Contract Value is based upon the following factors: (1) the amount of service commissions paid to Agent on Active policies, as defined by the Companies, during the twelve month period immediately preceding the effective date of termination; and (2) the number of policies in Agent's Active code number, as defined by the Companies, as of the effective date of termination. If Agent has less than fifty (50) policies in an Active code number, Contract Value is $0.

Otherwise, Contract Value is computed as the 12 month service commissions times the multiplier specified in the following schedule:

| Twelve Month Service Commissions Multiplier ||
| --- | --- |
| **Number of Active Policies** | **Percent of Service Commission** |
| Below 50 | 0 % |
| 50 - 750 | 25 % |
| 751 - 1500 | 50 % |
| 1501 - 2000 | 75 % |
| Over 2000 | 100 % |

2. Paying Contract Value.

Contract Value is paid in not less than three (3) equal installments and at not less than six (6) month intervals, the first payment to be made within a reasonable time after the effective date of termination. Agent may elect to receive Contract Value in three or more equal annual installments, the first installment to be paid within a reasonable time after the effective date of termination. If Agent elects annual installments, the Companies will pay simple interest on any unpaid balance of Contract Value at a rate equal to the rate being paid by Farmers New World Life Insurance Company on its premium deposit fund at the time any installment becomes due. Only if Agent dies or becomes totally disabled before this Agreement is terminated, or Contract Value is $10,000 or less, may Agent or Agent's estate, as applicable, elect to receive Contract Value in one lump sum.

I. **Agent Bonuses.** From time to time and in their sole discretion, one or more of the Companies may make available to Agent various bonus programs. All bonus programs are subject to termination or modification by the Companies at any time. While the Companies attempt to provide a summary of the terms and conditions of existing bonus programs on an annual basis, such terms and conditions are subject to change at any time and revisions may be communicated in bulletins or other publications.

J. **Post-Termination Obligations.**

Agent agrees:

1. To accept the payment or tender of Contract Value, if any is due under this Agreement (or installment, if applicable);

2. That except for the rights afforded to Agent under paragraph E and any remaining Contract Value payments or post-termination commissions owed under paragraphs F and H, Agent has no further interest in or rights under this Agreement, is entitled to no further commissions hereunder and is no longer an agent of the Companies as of the effective date of Agreement termination;

3. At the request of the Companies, to execute an assignment of any and all interests obtained incidental to this Agreement, including, without limitation, any interest in the telephone or facsimile numbers, domain names, websites, and email addresses used in connection with the Agency and/or any leased or rented office location at which the Agency operated;

4. For a period of one year following the effective date of termination of this Agreement, to neither directly nor indirectly solicit, accept, or service the insurance business of any policyholder of record in the Agency as of the effective date of termination or, at any time otherwise, use confidential information and/or trade secrets following the effective date of termination for any purpose not related to Agent's duties under this Agreement; and

5. Agent shall not be relieved of Agent's duties under paragraphs J.3 and J.4 on the grounds that no Contract Value is to be paid to Agent under the terms of this Agreement.

K. **Return of Confidential Information.** Agent acknowledges that all manuals, lists and other policy or customer information of any kind (including information pertaining to policyholders and expirations and the expirations themselves) contain trade secret and confidential information of the Companies, and are, and shall, after termination of this Agreement, remain the property of the Companies. Agent agrees such information will not be used or divulged,

directly or indirectly, in any way detrimental to the Companies and will be returned immediately, along with any copies, to the Companies upon termination of this Agreement. Agent agrees not to retain the information described in this paragraph, in any form, following termination of this Agreement. Agent agrees to maintain all records in accordance with published policies, rules and manuals of the Companies, in effect at the time of the appointment and modified from time to time by the Companies, and act in compliance with applicable law concerning record confidentiality and retention.

L. **Independent Contractor.** Nothing contained herein is intended or may be construed to create the relationship of employer and employee between the Companies and Agent or between the Companies and anyone working in the Agency. At all times, Agent is responsible for the acts or omissions of Agency personnel. Agent is an independent contractor for all purposes. Among other factors, the time to be expended by Agent and the individuals chosen by Agent to work in the Agency, including, without limitation, such time and work which may be needed to accomplish or meet Agent's duties referred to in Section B above, are solely within Agent's discretion and control, and the persons to be solicited and the area wherein solicitation is conducted are at the election of Agent.

Agent shall, as an independent contractor, exercise sole right to determine the time and manner in which Agent's duties and other objectives of the Companies are met, provided only that Agent conform to normal good business practice, and to all local, state and federal laws governing the conduct of the Companies and their Agents.

M. **Integration Clause.** This Agreement embodies the entire agreement and understanding between the Parties hereto as to the matters addressed and supersedes all prior agreements and understandings relating to the subject matter hereof. No change, alteration or modification of this Agreement can be made unless it is in writing and signed by Agent and an authorized representative of the Companies. If any portion of this Agreement should be found to be wholly or partially unenforceable, this will not affect the validity or enforceability of the remainder or balance of the terms set forth in this Agreement. All representations, warranties and confidentiality provisions herein survive the termination of this Agreement.

I, the undersigned Agent, acknowledge that I have read and understand the terms and conditions contained in this Agreement.

For Agent:

_Shanelle Horton_ (Signature of Agent)   5/26/15 Date (mm/dd/yyyy)

Shanelle    N    Horton
Printed or Typed Name of Agent

For the Companies:

By: _Alonzo_ (Signature of Authorized Representative)   ADM Title

   6/4/2015 Date (mm/dd/yyyy)

Alonzo Dunn, Jr
Printed or Typed Name of Authorized Representative